```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
ANITA WASHINGTON, individually and                            :
on behalf of all others similarly situated,                   :    25-CV-1916 (JAV)
                                                              :
                                    Plaintiff,                :    OPINION AND
        -v-                                                   :       ORDER
                                                              :
THE COCA COLA COMPANY,                                        :
                                                              :
                                    Defendant.                :
------------------------------------------------------------- X
```

JEANNETTE A. VARGAS, United States District Judge:

      Plaintiff Anita Washington ("Plaintiff"), on behalf of herself and all others similarly situated, brought this action in New York Supreme Court, Bronx County, against The Coca Cola Company ("Defendant") for violation of sections 349 and 350 of the New York General Business Law ("GBL"). Defendant removed the action to federal court pursuant to 28 U.S.C. §§ 1332(d)(2), 1441(a) and (b). Before the Court is Defendant's motion to dismiss. ECF No. 10. The Court GRANTS the motion and dismisses the action for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## BACKGROUND

      The Court accepts as true the following allegations set forth in the Complaint for purposes of this motion to dismiss. Defendant manufactures, distributes, sells, and markets a sparkling soda water under the Fresca brand name ("Fresca" or "Product"). ECF No. 1, Ex. A ("Compl."), ¶ 10. The Product's label prominently

states that Fresca is "Sparkling Soda Water – Grapefruit Citrus." *Id.* Below that, the label describes the product as "Sparkling Soda Water, Grapefruit Citrus Flavor with Other Natural Flavors." *Id.* ¶ 18.



The ingredient list on the back indicates that, in addition to carbonated water, citric acid and concentrated grapefruit juice, Fresca contains the artificial sweeteners aspartame and acesulfame potassium." *Id.* ¶ 11.

Anita Washington, a resident of New York, alleges that the Product is "'misbranded' because "neither 'Sparkling Soda Water - Grapefruit Citrus' nor 'Sparkling Soda Water [] Grapefruit Citrus Flavor With Other Natural Flavor,' is a truthful, and/or non-misleading, 'common or usual name[s]' for artificially sweetened soda water with added fruit flavor." *Id.* ¶¶ 18, 33. Plaintiff alleges that "consumers understand 'soda water' and/or 'sparkling soda water' to mean carbonated water, without added sweetening ingredients." *Id.* ¶ 19.

Plaintiff alleges that she purchased Fresca between September 2021 and September 2024 at "third parties, including grocery stores, big box stores, dollar stores, bodegas, gas stations, warehouse club stores, drug stores, convenience stores, specialty grocery stores, ethnic food stores, gas station convenience stores, and/or other similar locations." *Id.* ¶ 48. The Product is sold at approximately $1.99 for a twelve ounce can, which is "higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions." *Id.* ¶ 32. Plaintiff further alleges that the Product was worth less than what she paid, and she would not have paid the price she did absent Defendant's "misleading statements and/or omissions." *Id.* ¶ 49.

Plaintiff asserts causes of action under sections 349 and 350 of the GBL. *Id.* ¶ 51. Plaintiff avers that the packaging and labeling of the Product "cause[]

purchasers to expect it did not contain artificial sweeteners," as "such ingredients are not a part of such beverages, and/or their presence is typically prominently disclosed to the purchaser." *Id.* ¶ 66.

## LEGAL STANDARDS

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court accepts as true all well-pleaded allegations and draws all reasonable inferences in favor of the non-moving party. *Romanova v. Amilus Inc*, 138 F.4th 104, 108 (2d Cir. 2025). The court, however, does not consider "conclusory allegations or legal conclusions couched as factual allegations." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (quotations and citation omitted).

A complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). A claim is plausible when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. A complaint must offer more than a "sheer possibility that defendant has acted unlawfully." *Id.* It must allege facts that "nudge[] [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 547.

## DISCUSSION

Section 349 of the GBL prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

N.Y. Gen. Bus. Law § 349. Section 350 similarly prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." *Id.* § 350. "The standard for recovery under Section 350, while specific to false advertising, is otherwise identical to Section 349." *Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 802 (S.D.N.Y. 2021) (cleaned up). "To successfully assert a claim under either section, a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quotations and citations omitted). In its motion to dismiss, Defendant does not contest that the Complaint adequately pleads the first and third prongs. The focus of the motion is on whether Plaintiff has plead that Fresca's labeling is deceptive or misleading.

The "reasonable consumer" standard governs the deception element under Sections 349 and 350. This test requires a showing that a representation is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013). This is an objective standard. *Bustamante v. KIND, LLC*, 100 F.4th 419, 426 (2d Cir. 2024). The Second Circuit has emphasized that "context is crucial" and that courts must consider "the challenged advertisement as a whole." *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018) (cleaned up). Because the reasonable consumer test is objective, courts may determine as a matter of law whether a representation is likely to mislead. *Fink*, 714 F.3d at 741; *see also Brumfield v. Trader Joe's Co.*, 17-

CV-3239 (LGS), 2018 WL 4168956, at *2 (S.D.N.Y. Aug. 30, 2018) ("A consumer deception case may be dismissed under Rule 12(b)(6) where it is clear that reasonable consumers would not be deceived by a product's packaging.").

Plaintiff has failed to plausibly allege that Defendant materially misled consumers in advertising the Product as a "sparkling soda water." Plaintiff's interpretation of the Product labeling diverges from that of a reasonable consumer. Moreover, any potential front label ambiguity is clarified by the information on the back label, which includes an ingredient list clearly disclosing the presence of the artificial sweeteners. The action must therefore be dismissed for failure to state a claim.

### A. A Reasonable Consumer Would Not Be Misled by Fresca's Label Into Believing that the Product Contained No Artificial Sweeteners

To withstand a motion to dismiss under Rule 12(b)(6), Plaintiff must allege facts from which a plausible inference can be drawn that "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled" by the allegedly deceptive Product label. *Jessani v. Monini N. Am., Inc.*, 744 F. App'x 18, 19 (2d Cir. 2018). A claim is not actionable under sections 349 and 350 merely because a plaintiff alleges that a "label might conceivably be misunderstood by some few consumers." *Id.* (quotations and citations omitted). The allegations in the Complaint do not satisfy this test.

Context and common sense govern the inquiry into whether a representation is deceptive. The "reasonable consumer" standard is not an invitation to entertain implausible interpretations. *Troncoso v. TGI Friday's Inc.*, No. 19 Civ. 2735 (KPF),

2020 WL 3051020, at *7 (S.D.N.Y. June 8, 2020) ("A reasonable consumer does not lack common sense."). Rather, the standard presumes a consumer is guided by rational judgment and not actively searching for ambiguity. Moreover, "the plaintiff's personal expectations do not establish that 'a reasonable consumer acting reasonably under the circumstances' would be misled by the label." *Randolph*, 2022 WL 953301 at *3.

Plaintiff does not claim that the Product's front label explicitly states that it is unsweetened or that it contains no artificial sweeteners. Rather, her claim of deception depends entirely upon her assertion that a significant portion of the consuming public reasonably understands "soda water" with "citrus flavor" and/or "natural flavors" to be a beverage that contains no artificial sweeteners. The Complaint cites four sources of authority for this understanding of consumer expectation. First, the Complaint references unspecified dictionary definitions. Compl. ¶¶ 16, 20. Second, the Complaint relies on a blog post from a health advocate. *Id*. ¶¶ 12-15. Third, Plaintiff alleges that the FDA "confirmed" this understanding through "extensive consumer research." *Id*. ¶ 19. Finally, Plaintiff claims that a "survey of the marketplace" indicates that beverages described as sparkling soda water with fruit flavoring typically do not contain sweetening ingredients. *Id*. ¶¶ 24-27. The Court considers each of these in turn.

### 1. Dictionary Definitions

Courts within this Circuit routinely rely on accredited dictionary definitions to assess how a reasonable consumer would interpret a term in cases arising under

sections 349 and 350 of the GBL. *See, e.g., Lancaster v. Am. Textile Co., Inc.*, 719 F. Supp. 3d 204, 218-19 (N.D.N.Y. 2024); *Cooper v. Anheuser-Busch, LLC,* 553 F. Supp. 3d 83, 96 (S.D.N.Y. 2021); *Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 383 n.5 (S.D.N.Y. 2021); *cf. Murphy Door Bed Co. v. Interior Sleep Sys., Inc.*, 874 F.2d 95, 101 (2d Cir. 1989) (holding, in the trademark context, that dictionary definitions, while not "conclusive proof" of public perception, can be influential in determining the public's general understanding of a particular term).

The Complaint alleges that unspecified dictionaries define the term "soda water" as "an effervescent beverage, consisting of water charged with carbon dioxide, which may have added fruit flavoring." Compl. ¶ 16; *see also* ECF No. 12 ("Opp. Br.") at 3-4. The Merriam-Webster Dictionary defines "soda water" as "a weak solution of sodium bicarbonate with some acid added to cause effervescence," or alternatively "a beverage consisting of water highly charged with carbon dioxide."[1] The Oxford English Dictionary similarly defines "soda water" as " [w]ater containing a solution of sodium bicarbonate, or, more generally, charged under pressure with carbon dioxide (carbonic acid gas), strongly effervescent, and used as a beverage or stimulant."[2] These definitions are silent as to whether the class of beverages known as "soda water" includes carbonated beverages with added sweeteners.

---

[1] *See* "Soda water," *Merriam-Webster Dictionary* (Online), Merriam-Webster, https://www.merriam-webster.com/dictionary/soda%20water (accessed Aug. 6, 2025).
[2] *See* "soda-water," *Oxford English Dictionary* (Online), Oxford University Press, https://www.oed.com/dictionary/soda-water_n?tab=meaning_and_use#21948313 (accessed Aug. 6, 2025).

But Plaintiff's focus on the term "soda water" relates to only one aspect of the front label design. To determine whether the front label is misleading, it must be evaluated in its entirety. *Fink*, 714 F.3d at 742. Advertising cannot be considered in fragments, focusing only on selected excerpts without a consideration of the entire context in which such words appear. *Id.*

In this case, the Product's label describes the "sparkling soda water" as "grapefruit citrus." The front label further identifies the Product as containing "grapefruit citrus flavor" and "other natural flavors." Compl., ¶¶ 10-11, 18. The word "flavor" clearly modifies the term "sparkling soda water."

The Merriam-Webster Dictionary defines "flavor" as "the quality of something that affects the sense of taste" or "a substance that flavors."[3] Similarly, something which is "flavored" is defined as "having an added flavor or a specified flavor."[4] These dictionary definitions demonstrate that the word "flavor" implies the presence of an additive. Any reasonable consumer would likely understand the repeated used of the term "flavor" on the front label, along with the words "grapefruit citrus," to indicate the presence of an added ingredient or ingredients that provides the taste of grapefruit. Plaintiff has alleged no facts suggesting that reasonable consumers understand a *flavored* soda water to be a beverage that does

---

[3] *See* "flavor," *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/flavor (accessed Aug. 12, 2025).
[4] *See* "flavored," *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/flavored (accessed Aug. 12, 2025).

not contain sweetener, artificial or otherwise.[5]  These dictionary definitions therefore are of no aid to Plaintiff.

### 2. Blog Post

Plaintiff's reliance on a blog post authored by a self-proclaimed health advocate, Pl. Opp. at 3-6, is similarly unpersuasive.  The blog post in question, which is titled "Is Fresca Healthy?", opines:

> If you look closely on the Fresca label, it is sold as **"Sparkling Soda Water."**  But what does that really mean? And is that name hiding anything?
>
> The terms "sparkling water" and "soda water" often refer to simple, pure *carbonated water*.  You may also hear this called "seltzer water," "fizzy water," or "club soda." It's just water, carbonation (bubbles), and maybe a bit of natural flavor or mineral salts.
>
> But if you're looking for just water and bubbles, you need to be careful.  You can also find drinks sold as "sparkling water beverage" (or similar) that *do* have added sugar or artificial sweeteners.  And Fresca is one such drink.  (It has artificial sweeteners.)
>
> **Personally, I find it misleading for Fresca to be labeled "Sparkling Soda Water."**  When I hear "soda water," I think of club soda, which doesn't have sweeteners of any kind.  But Fresca does have artificial sweeteners.
>
> In my view, the more appropriate label for Fresca would be "diet soda."  When you look at the ingredients, it has multiple artificial sweeteners

---

[5] The Complaint is not clear as to whether its theory is that reasonable consumers purportedly believe that naturally-flavored soda water contains no sweeteners at all, or just no artificial sweetener.  *Compare* Compl. ¶¶ 9-10, 15, 19, 21, 25 *with id.* ¶¶ 7, 18, 22, 23.  The distinction is not relevant to the Court's analysis, however, as the Complaint fails under either theory.

> and preservatives that make it closer to a diet soda
> than it is to plain club soda.

*See* Tyler McFarland, *Is Fresca Healthy? 11 Things You Should Know*, https://www.iamgoingvegan.com/is-fresca-healthy/#sodaorwater (March 8, 2022) (emphasis in original).[6]

The post does not purport to set forth a generalized understanding of the term "soda water." To the contrary, the author acknowledges that other sparkling waters on the market also contain sweeteners. *Id.* He then expresses an opinion (using the words "in my view" and "personally") that such beverages should have a different label than "plain club soda." *Id.* The reasonable consumer test requires more than personal or niche interpretation of the term in question, however. *See Campbell,* 516 F. Supp. 3d at 381. It requires allegations that would plausibly support an inference that a "significant portion of the general consuming public" interprets "soda water" in the way the Plaintiff has. *Id*. (quotations and citation omitted). An opinion expressed in a blog post by a single author does not meet this standard.

### 3. FDA Regulations

The Federal Food, Drug and Cosmetic Act ("FDCA") grants the Federal Drug and Food Administration ("FDA") the authority to "promulgate regulations fixing

---

[6] Although the full text of the blog post is not quoted in the Complaint, the Court may consider it in this motion to dismiss as it has been referenced and incorporated by reference. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 112 (2d Cir. 2010) (holding that district court can properly consider materials outside the pleadings in deciding a motion to dismiss if incorporated by reference in the complaint).

and establishing for any food, under its common or usual name so far as practicable, a reasonable definition and standard of identity." 21 U.S.C. § 341. "The standard of identity specifies the defining characteristics of the given food." *Lee v. Mondelez Int'l, Inc.*, 637 F. Supp. 3d 116, 124 (S.D.N.Y. 2022). In essence, standards of identity "determine what a food product must contain to be marketed under a certain name." *Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 483 (7th Cir. 2020). "The standards of identity were developed to help protect consumers and promote honest and fair dealing and ensure that the characteristics, ingredients and production processes of specific foods are consistent with what consumers expect." *Lee*, 637 F. Supp. 3d at 124 (cleaned up).

Although "soda water" has been considered a "nonstandardized" food by the FDA since 1989, Plaintiff relies on the FDA's past rulemaking in this area as support for her claims. Specifically, Plaintiff argues that the FDA previously put forward a definition of "soda water" that suggests that a reasonable consumer understands the term to refer only to unsweetened beverages. Pl. Opp. at 6-8. To the extent the FDA's regulatory history in this area is at all relevant, however,[7] it indicates that the general public does not and has not shared a common

---

[7] It is doubtful that reasonable consumers would be aware of 60-year old FDA regulatory history in this niche area, "much less that they incorporate the regulations into their day-to-day marketplace expectations." *Wynn v. Topco Assocs., LLC*, No. 19-CV-11104 (RA), 2021 WL 168541, at *3 (S.D.N.Y. Jan. 19, 2021). Plaintiff alleges, however, that the FDA regulations were based upon the FDA's "extensive consumer research," Compl. ¶ 19, and thus presumably are reflective of wider public understanding at the time they were adopted. It is unclear what the basis for this allegation is, as the regulatory history did not refer to any such consumer research. Since a close examination of these regulations only serves to undermine Plaintiff's arguments, the Court need not determine the weight that should be given to this regulatory history in ascertaining a reasonable consumer's understanding.

understanding of the term "soda water" or "sparkling soda water" as products "which do not include any type of sweeteners." *Id*. at 3.

In 1963, the American Bottlers of Carbonated Beverages ("American Bottlers"), an industry group which represented 58 percent of the bottlers of non-alcoholic carbonated beverages in the United States, filed a petition with the FDA proposing that the FDA promulgate definitions and standards of identity for soda water and artificially sweetened carbonated beverages. *See* Nonalcoholic Carbonated Beverages; Soda Water, Artificially Sweetened Carbonated Beverages; Proposed Definitions and Standards of Identity, 28 Fed. Reg. 9,988 (Sept. 11, 1963). They proposed that "soda water" be identified as "the class of food which is characterized by its carbonation." *Id.*

Notably, under American Bottler's proposed standard of identity, soda water could be "sweetened with one or more nutritive sweeteners" and "flavored with natural flavoring ingredients or artificial flavoring ingredients or both and may be colored with natural or artificial coloring ingredients or both," provided that certain types of "soda water," commonly known as club soda or plain soda, need not be sweetened, flavored, or colored. *Id.* They proposed that the term "soda water" would be preceded by a word characterizing the flavor of the soda water. *Id.* The proposed rule further suggested that "[s]oda water that contains artificial flavoring [or] artificial coloring . . . be labeled to show that fact by [using], as appropriate, '[w]ith artificial flavoring' or 'artificial flavoring added' or 'artificially flavored.'"

And with respect to "artificially sweetened soda water," American Bottlers proposed that such beverages include the words "artificially sweetened" on the label. *Id.*

In 1966, the FDA responded to this petition by promulgating a final rule setting a standard of identity with respect to soda water. Soda Water; Final Order Promulgating Definition and Standard of Identity, 31 Fed. Reg. 1,066, 1,067 (Jan. 27, 1966) ("Final Rule"). The Final Rule provided that "[s]oda water is the class of beverages made by absorbing carbon dioxide in potable water." According to the Final Rule, soda water may contain nutritive sweeteners, as well as natural and artificial coloring. *Id.* "The name of the beverage for which a definition and standard of identity is established by this section, which is neither flavored nor sweetened, is soda water, club soda, or plain soda." *Id.* "The name of each beverage *containing flavoring and sweetening ingredients* is '-------- soda' or '-------- soda water' or '-------- carbonated beverage,'" with the blank to be filled in with the words that "designate the characterizing flavor of the soda water; for example, 'grape soda.'" *Id.* (emphasis added). In other words, under the FDA's definition, soda water encompassed both sweetened and unsweetened beverages. Those that were unsweetened were denoted "soda water," without the need for any further descriptive language. Soda water that was sweetened and flavored had to indicate the type of flavor on the label—just as the Product does in the label at issue.

The FDA declined at that time to set a standard of identity for artificially sweetened soda water, however, stating that such beverages would be addressed in a separate order. *Id.* at 1066. No separate order issued, however, "[b]ecause of

safety questions about the cyclamates and saccharines," and in 1973, the American Bottlers withdrew their petition with respect to artificially sweetened soda water as "obsolete." Definitions and Standards of Identity for Artificially Sweetened Soda Water; Withdrawal of Petition and Termination of Proposed Rulemaking, 38 Fed. Reg. 16,785 (June 26, 1973).

The 1966 regulation was originally promulgated at 21 C.F.R. § 31.1. In 1974, the FDA proposed an amendment to the soda water regulation, deleting the list of specific ingredients that could be included in a beverage while still permitting the beverage to fall within the regulatory definition of soda pop, and permitted "the optional use of any safe and suitable ingredient." Proposal to Amend Standard of Identity, 39 Fed. Reg. 18285 (May 24, 1974). The amended regulation excluded artificial sweeteners from the list of ingredients that could be included, however, because artificially sweetened beverages were not "encompassed within the" definition of soda water. *Id.* In 1977, the revised version of the soda water regulation was promulgated at 21 C.F.R. § 165.175. *See* 42 Fed. Reg. 14477 (Mar. 15, 1977).

There is thus some support in this chronology for the notion that a reasonable consumer in the 1970s might have considered soda water to include beverages with natural sweeteners, but not beverages that contained artificial sweetener. Yet these findings by the FDA provide little evidence as to whether a contemporary audience would draw such a distinction. Indeed, in 1989, the FDA repealed the soda water standard of identity. Nonalcoholic Beverages: Repeal of

Soda Water Standard of Identity; Amendment of Bottled Water Quality Standard, 54 Fed. Reg. 398-01 (Jan. 6, 1989).  In doing so, the FDA found that the "statement in the soda water standard regarding artificially sweetened carbonated beverage products is outdated.  For some time, the agency has considered artificially sweetened carbonated beverage products to be nonstandardized foods." Nonalcoholic Beverages; Proposal to Repeal Standard of Identity for Soda Water, 52 Fed. Reg. 18922-01 (May 20, 1987).

If the FDA's pronouncements about the suitability of artificial sweeteners for inclusion in products marketed as "soda water" were outdated in 1989, they cannot serve as a basis by which to ascertain the viewpoints of the general public in 2025.

### 4.  Survey of Other Products in Market

Finally, the Complaint refers obliquely to a "survey of the marketplace" that purportedly demonstrates that beverages described as sparkling soda water with fruit flavoring typically do not contain sweetening ingredients.  Compl. ¶¶ 24-27.  Plaintiff does not elaborate on this survey:  who conducted it, what methodology was used, what regional or national market was examined, or what percentage of flavored soda water products are sweetened versus unsweetened by product name, volume of sales, or any other metric.  Plaintiff also provides no names or examples of the similarly named soda water products that do not contain sweetening ingredients.  But even if Plaintiff did include such details in the Complaint, it would not demonstrate that a reasonable consumer understands *all* soda waters to be unsweetened.  This bare allegation thus adds little to Plaintiff's claims.

## B. Back Label Clarity Cures Any Front Label Ambiguity

When reviewing disputes pertaining to false advertising and misrepresentation claims under Sections 349 and 350, courts within this District consistently return to a core principle: back label clarity can cure front label ambiguity. *See e.g.*, *Fink*, 714 F.3d at 742; *Bates v. Abbott Lab'ys*, 727 F. Supp. 3d 194, 213 n.7 (N.D.N.Y. 2024), *aff'd*, No. 24-919-CV, 2025 WL 65668 (2d Cir. Jan. 10, 2025) ("Plaintiff does not allege the labeling claims that the drinks are low in added sugar. A consumer who agrees with Plaintiff's perspective that such added sugar vitiates any other health benefits the drinks may contain can look at the labels and determine how much sugar the drinks contain. [A]ny misconception about the contents of the Ensure drinks based on claims about positive benefits can be resolved by a consumer who looks at the sugar content on the labels."); *Boswell v. Bimbo Bakeries USA, Inc.*, 570 F. Supp. 3d 89, 94 (S.D.N.Y. 2021) ("[A]mbiguity [can be] resolved by reference to the list of ingredients or a Nutrition Facts panel"); *Davis v. Hain Celestial Grp., Inc*, 297 F. Supp. 3d 327, 334 (E.D.N.Y. 2018). Ambiguities with respect to product ingredients can be resolved if the product packaging includes an ingredient list, nutrition facts, or other contextual disclosures that contain clarifying information that is accurate and accessible. *Boswell*, 570 F. Supp. 3d at 94-95; *Davis,* 297 F. Supp. 3d at 337. "Indeed, reasonable consumers are trained to look for clarification on a product's unambiguous ingredients panel." *Seljak v. Pervine Foods, LLC*, No. 21 CIV. 9561 (NRB), 2023 WL 2354976, at *14 (S.D.N.Y. Mar. 3, 2023) (cleaned up); *see also*

*Brown v. Kellogg Sales Co.*, No. 1:20-CV-7283 (ALC), 2022 WL 992627, at *6 (S.D.N.Y. Mar. 31, 2022) ("Here, the reasonable consumer would overcome any confusion by referring to the unambiguous ingredient list on the packaging.").

Plaintiff has failed to allege facts sufficient to suggest that a substantial number of reasonable consumers understand Fresca to be an unsweetened beverage. Yet even if there was any ambiguity in a consumer's mind, it would easily be cured by reference to the ingredient list on the back panel. The ingredient list clearly discloses the presence of Aspartame and Acesulfame Potassium, both artificial sweeteners, Compl. ¶ 11, clarifying any residual ambiguity.

Plaintiff's reliance on the Second Circuit's decision in *Mantikas v. Kellogg Co.*, 910 F.3d 633 (2d Cir. 2018), is unavailing. In *Mantikas,* plaintiffs alleged that "WHOLE GRAIN" and "MADE WITH WHOLE GRAIN" statements on product packaging affirmatively misrepresented the product's grain content as predominantly whole grain, when the primary ingredient was enriched white flour. *Id.* at 637. The Second Circuit held that these affirmatively inaccurate front-label claims could mislead a reasonable consumer despite accurate disclosures elsewhere, because consumers are not expected to scrutinize side-panel ingredient lists to correct a misleading main label. *Id.* at 638-39. *Mantikas* therefore stands for the proposition that, where the front label communicates inaccurate information, small-print qualifications do not neutralize the deception. *Id.*

*Mantikas*'s holding, however, is limited to affirmatively inaccurate claims about ingredients. It does not apply where the front label is merely ambiguous as to

ingredients included in the product. *See, e.g.*, *Bates*, 2025 WL 65668, at *2 ("[U]nlike in *Mantikas*, the challenged labeling statements at issue on the Ensure products are not alleged to be affirmatively inaccurate, or contradictory to the Nutrition Facts Panel, because none of the challenged statements reference the sugar content of the product; indeed, none of the labeling statements at issue even mentions sugar."); *Boswell*, 570 F. Supp. 3d at 94-95; *Wynn v. Topco Assocs., LLC*, No. 19-CV-11104 (RA), 2021 WL 168541, at *4 (S.D.N.Y. Jan. 19, 2021).

The Fresca front label is not affirmatively misleading about the presence of artificial sweeteners. The front label of the Product does not affirmatively state that the Product contains unadulterated "soda water" or has no added artificial sweeteners. And consumers who are uncertain about whether Fresca contains artificial sweeteners can easily find out by flipping the can around and conducting a quick perusal of the ingredient list.

The Court acknowledges that in *Letoski v. Coca-Cola Co.*, 753 F. Supp. 3d 650, 661-62 (N.D. Ill. 2024), a district court permitted a claim similar to the one set forth in the Complaint to proceed against Fresca under the Illinois Consumer Fraud Act. The court in that action held that, at the motion to dismiss stage, it was enough that Plaintiff's "claim that reasonable consumers expect 'sparkling soda water' to contain no sweeteners, real or artificial" relied upon his own perception and that of another consumer, and was not inherently fanciful or unreasonable. *Id.* at 661. That decision was rendered under a different statute, however, and applies Seventh Circuit precedent that runs counter to the law of this Circuit. *Compare*

*Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 477 (7th Cir. 2020) ("The ambiguity rule for front-label claims would, we fear, encourage deceptive advertising and labeling. Lots of advertising is aimed at creating positive impressions in buyers' minds, either explicitly or more subtly by implication and indirection."), *with Bates*, 2025 WL 65668, at *2 (holding that, absent affirmatively inaccurate representations on the front panel, ambiguities can be resolved through disclosures in ingredient list); *see also Boswell*, 570 F. Supp. 3d at 94-95. This Court is bound by Second Circuit law, which requires dismissal of this case for failure to state a claim.

## CONCLUSION

For the reasons stated herein, Defendant's motion to dismiss is GRANTED. The Clerk of Court is directed to terminate all pending motions and close the case.

SO ORDERED.

Dated: September 24, 2025
New York, New York

_____
JEANNETTE A. VARGAS
United States District Judge